**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FIFTH THIRD MORTGAGE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>IRA KAUFMAN, CHICAGO TITLE INSURANCE COMPANY, TRADITIONAL TITLE COMPANY, LLC, ELIOT HIGUEROS d/b/a E&H SERVICES, LLC, ZEAL MANAGEMENT, LLC, JOHN KELLY, RAZZAK KHADER, ZARAK KHAN, KRK FINANCIAL SERVICES, INC., d/b/a KRK MORTGAGE BANCORP and d/b/a KRK INSURANCE SOLUTIONS, THEODORE THEODOSIADIS, 4725 S. MICHIGAN LLC, JEFFREY TOWNSEND, and ATINUKE OKOYE,<br><br>    Defendants. | No. 12 C 4693<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Fifth Third Mortgage Company has brought this action for breach of contract against Defendant Chicago Title Insurance Company, and for fraud against Defendants Theodore Theodosiadis, Ira Kaufman, Traditional Title Company, LLC, John Kelly, and others. Currently before me are four motions to dismiss for failure to state a claim brought by the above named defendants respectively. For the following reasons, Chicago Title Insurance Company's motion to dismiss Count I of the First Amended Complaint is denied. Theodore Theodosiadis's motion to dismiss Count II of the First Amended Complaint is denied. Ira Kaufman's and Traditional Title Company's motion to dismiss is denied as to Count II and granted without prejudice as to

Counts III and IV. John Kelly's motion to dismiss Counts III and IV of the First Amended Complaint is granted without prejudice.

## BACKGROUND

This claim arises from three mortgage loans issued by Plaintiff to three different borrowers between May and October 2007 – the "Daughtery" loan, the "Stirb" loan, and the "Okoye" loan. Each of these loans was for the purchase of residential property on South Michigan Avenue in Chicago. By all appearances, these loans turned out to be fraudulent, the money borrowed by straw buyers with no intention or ability to pay it back.

Plaintiff alleges that the defendants all played a part in perpetrating this fraud. Messrs. Theodosiadis and Kelly were two sellers of the underlying properties. Mr. Kaufman was the seller's attorney in connection with the Daughtery and Stirb loans. Mr. Kaufman's connection to the Okoye loan is less clear, but it appears that he was compensated in the amount of $1,000 for "services rendered" in connection with that loan. Traditional Title, a company which Mr. Kaufman co-owned and managed, was the closing agent for the Daughtery loan. Finally, Plaintiff entered into a Closing Protection Contract ("CPC") with Chicago Title Insurance Company in connection with the Daughtery loan. The CPC identified Traditional Title as Chicago Title Insurance Company's "Issuing Agent or Approved Attorney."

The scheme underlying Plaintiff's claims allegedly saw certain defendants promise young women cash in return for acting as straw buyers for various residential properties. Plaintiff alleges that the defendants would aid the straw buyers in fraudulently securing the loans by creating for them fake employment histories, fake income histories and fake references. The goal, Plaintiff asserts, was to have the straw buyers close on several properties, with several different banks, in a short period of time, before the various mortgage servicers discovered the

2

straw buyers' buying histories. This gave the false impression that each loan was the buyer's sole real estate loan.

In addition to the residential unit purchased with a loan from Plaintiff, the straw buyer involved in the Daughtery loan bought seven other residential units, all at 4725 S. Michigan Avenue, listing each unit as the buyer's primary residence. Crucially, Mr. Kaufman was the seller's attorney and Traditional Title was the closing agent for each of these transactions. A company called 4725 S. Michigan LLC, of which Mr. Theodosiadis was one of two members, was responsible for selling all of these units.

Mr. Kelly was the seller responsible for the units purchased with the Stirb and Okoye loans respectively. Although these borrowers are also alleged to have purchased multiple units purporting to be their respective primary residences, it does not appear that Messrs. Kaufman or Kelly was involved in any of the other transactions.

The three mortgagors, the reader will not be surprised to learn, soon defaulted on the loans. Plaintiff eventually foreclosed on all three mortgages, which were eventually acquired by the Federal Home Loan Mortgage Corporation ("Freddie Mac"), apparently as part of the bank "bail-out" precipitated by the subprime mortgage crisis. Upon discovering the apparent fraud involved in each of the mortgages, however, Freddie Mac required Plaintiff to buy them back, indemnifying Freddie Mac for the losses stemming from the loans.

Plaintiff now seeks, *inter alia*, damages from Defendants in the amount of this loss.

**DISCUSSION**

When considering a motion to dismiss for failure to state a claim, the court treats all well-pled allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009). "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level, that is, the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. *Id.*

I will take each Defendant's motion in turn.

**A. Chicago Title's 12(b)(6) Motion to Dismiss Count I of the First Amended Complaint**

As noted above, Plaintiff entered into the CPC with Chicago Title in connection with the Daughtery loan, with Traditional Title listed as Chicago Title's "Issuing Agent or Approved Attorney." In Count I, Plaintiff charges Chicago Title with breach of that contract.

Under the CPC, Traditional Title was obligated to comply with certain closing instructions. Among these were obligations to notify Plaintiff of any material fact that might influence the decision to make the loan, to notify Plaintiff of any discovery that a party to the transaction made a misrepresentation, and to suspend the transaction and notify Plaintiff if the closing agent learned that the borrower did not intend to occupy the property. Further, Chicago Title agreed under the CPC to reimburse Plaintiff for actual losses arising out of the failure of Traditional Title to comply with these instructions, to the extent that the instructions related to the collection and payment of funds due Plaintiff.

Plaintiff has adequately alleged that Mr. Kaufman, and, through him, Traditional Title, was aware that the borrower in connection with the Daughtery loan did not intend to use the property as her primary residence, despite representing as such in her loan papers. This is so because Plaintiff has alleged that Mr. Kaufman was the seller's attorney in connection with

4

seven other residential real estate transactions, all sold to the same buyer, with each property noted as the buyer's primary residence. Plaintiff also alleges that Traditional Title was the closing agent for each of those seven other transactions. Plaintiff asserts that Traditional Title failed to share this information with Plaintiff, as required by the closing instructions in the CPC.

Further, Plaintiff has alleged that this non-compliance with the closing instructions materially contributed to Fifth Third essentially entering into a mortgage agreement without a bona fide borrower. To the extent this is the case, closing instructions that would have averted such an outcome surely relate to the "collection and payment of funds due" Fifth Third, and Chicago Title certainly could be liable under the contract for losses that arise from such non-compliance.

On this point, at least, I find Chicago Title's counter-arguments to be unpersuasive. To be sure, as Chicago Title notes, Plaintiff was able to successfully foreclose on the mortgage despite Traditional Title's alleged non-compliance with the closing instructions. Chicago Title appears to urge that the upshot of this successful foreclosure is that Plaintiff was made whole – that in the end, Fifth Third received no less than what it bargained for. This is an implausibly short-sighted assessment of the circumstances underlying this transaction.

It may well be that a foreclosure, even at a severe loss, that arises as a result of, say, a downturn in the real estate market, still leaves a lender with no less than what the lender bargained for. A foreclosure that arises because the borrower was fraudulently manufactured (that is, the borrower for all practical purposes did not exist) is another story – Plaintiff bargained for a bona fide borrower. Without that, an immediate default was all but guaranteed. Taking Plaintiff's allegations as true, the sham-nature of the bargain cannot be excused or ignored simply because one of the remedies that would have been available to Plaintiff had the

5

transaction been legitimate remained available to the Plaintiff despite the fraud. *Cf. First American Title Insurance Company v. Vision Mortgage Corporation, Inc.*, 689 A.2d 154, 157 (N.J. Super. Ct. App. Div. 1997). Plaintiff has adequately pled an actual loss for which Chicago Title could be liable under the CPC.

**B. Theodore Theodosiadis's 12(b)(6) Motion to Dismiss Count II of the First Amended Complaint**

In Count II, Plaintiff alleges fraud in connection with the Daughtery loan against Mr. Theodosiadis among others. To state a claim for common law fraud, Plaintiff must plead: (1) a false statement of material fact; (2) that the defendant had knowledge that the statement was false; (3) that the defendant intended that the statement induce the plaintiff to act; (4) that the plaintiff relied on the truth of the statement; and (5) damages resulting from the reliance. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (1996).

Further, under Fed. R. Civ. P. 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Plaintiff has alleged fraud against Mr. Theodosiadis sufficient to survive a 12(b)(6) motion. Plaintiff asserts that Mr. Theodosiadis knew the sale of the property underlying the Daughtery loan was fraudulent because Mr. Theodosiadis's company (whose members were limited to Mr. Theodosiadis and one other individual) sold seven other units in the same building to the same buyer – each of which was identified as the buyer's primary residence. Plaintiff asserts that Mr. Theodosiadis intended for Plaintiff's belief that it was dealing with a bona fide purchaser to help induce Plaintiff to approve the loan, financially benefitting Mr. Theodosiadis to Plaintiff's detriment.

Mr. Theodosiadis points to Plaintiff's failure to allege any "specific communication or misrepresentation," or to "quote the content of any such communication or misrepresentation," attributable to Mr. Theodosiadis, but this argument does not help him. A statement need not have been made at all, whether verbally or on paper. *See Glazewski v. Coronet Ins. Co.*, 108 Ill.2d 243, 250 (1985). Plaintiff alleges an act of deceit – engaging in a sale without a bona fide purchaser. Taking Plaintiff's assertions as true, Mr. Theodosiadis deliberately participated in a transaction that, on the face of the knowledge attributed to him, was fraudulent. He is alleged to have done so to the detriment of Plaintiff and to his own benefit. That is enough at this stage of the proceeding.

## C. Mr. Kaufman's and Traditional Title's 12(b)(6) Motion to Dismiss Counts II, III and IV of the First Amended Complaint

Count II of the First Amended Complaint also alleges fraud against Mr. Kaufman and Traditional Title in connection with the Daughtery loan. Relevant to the instant motion, Counts III and IV allege fraud against Mr. Kaufman in connection with the Stirb and Okoye loans respectively.

With respect to Count II, Plaintiff's Complaint is sufficient as to Mr. Kaufman and Traditional Title for reasons similar to those described above regarding Mr. Theodosiadis. Here, instead of selling multiple properties to a single buyer, all purportedly to be used as that buyer's primary address, Plaintiff alleges that Mr. Kaufman was the seller's attorney for each of those transactions. Traditional Title, a company co-owned and managed by Mr. Kaufman, was the closing agent for each of the transactions. Plaintiff alleges that Mr. Kaufman and Traditional Title each benefited financially from the sales.

7

As with Mr. Theodosiadis, taking Plaintiff's assertions as true, Mr. Kaufman and Traditional Title deliberately participated in a transaction that, on the face of the knowledge attributed to them, was fraudulent. They are alleged to have done so to the detriment of Plaintiff and to their own benefit. This is sufficient to survive their 12(b)(6) attack on the Complaint.

I am not satisfied, however, that the same may be said of Counts III and IV. The borrowers in connection with the Stirb and Okoye loans are similarly alleged to have purchased multiple residential units in a short period of time, with each purported to be the borrowers' respective primary residences. Unlike the allegations regarding the Daughtery loan, however, the Complaint does not allege that Mr. Kaufman was involved with either the Stirb borrower or the Okoye borrower in the purchase of more than one property. The allegations as to Counts III and IV thus do not support the same inference (present in Count II) that Mr. Kaufman knew something was amiss.

Plaintiff points to Mr. Kaufman's connection with High Point Developers, Inc., a now dissolved corporation that received payments in connection with the Stirb and Okoye loans. High Point Developers was owned by an individual named Yaseen Ahmed, a non-party, who was the other member of 4725 S. Michigan, LLC, the entity through which Mr. Theodosiadis sold the units in connection with the Daughtery loan.

In light of this connection, Plaintiff asserts that, to the extent Plaintiff has properly alleged that Mr. Kaufman was part of a fraudulent scheme with respect to the Daughtery loan and the properties at 4725 S. Michigan Ave. (Count II of the Complaint), it would "defy common sense to suggest that [Mr. Kaufman] was a 'clean' participant" with respect to the Stirb and Okoye loans and the properties at 5416 S. Michigan Ave.

Perhaps, but that is insufficient to survive the defendants' 12(b)(6) attack on Counts III and IV. The connection Plaintiff has alleged between Mr. Kaufman, High Point, the properties at 4725 S. Michigan, and the properties at 5416 S. Michigan may well be grounds for "suspicion of a legally cognizable right of action," but that is not enough. Plaintiff's factual allegations must be sufficient to raise their claimed right to relief *above* the speculative level. Vague and equivocal assertions such as "[i]t was Kaufman's job to make sure that High Point…got its piece of the pie" will not do.

### D. Mr. Kelly's 12(b)(6) Motion to Dismiss Counts III and IV of the First Amended Complaint

Counts III and IV also allege fraud against Mr. Kelly in connection with the Stirb and Okoye loans respectively. As is the case with Plaintiff's allegations against Mr. Kaufman under Counts III and IV, Plaintiff's allegations against Mr. Kelly are insufficiently precise. Mr. Kelly was the seller involved in the Stirb and Okoye transactions. Unlike Mr. Theodosiadis, however, the Complaint does not allege that Mr. Kelly sold more than one piece of property to any single buyer, much less to a single buyer who indicated that multiple properties were all her primary residence.

Without this inference of irregularity, Plaintiff's Complaint as to Mr. Kelly falls short of pleading the "knowledge" necessary to state a claim for fraud. It is true that Rule 9(b) permits knowledge to be pled generally, but this iteration of Plaintiff's Complaint appears to go no further than to circularly allege in conclusory fashion that, because Mr. Kelly was involved in a fraudulent transaction, he must have personally known that the borrowers' conduct was fraudulent. A formulaic recitation of the elements of the cause of action will not suffice.

## CONCLUSION

For the foregoing reasons, Chicago Title's motion to dismiss Count I is denied, Theodore Theodosiadis's motion to dismiss Count II is denied, and Ira Kaufman and Traditional Title's motion to dismiss Count II is denied. Ira Kaufman's motion to dismiss Counts III and IV is granted, and John Kelly's motion to dismiss Counts III and IV is also granted. I grant these two motions to dismiss without prejudice. Plaintiff has requested, and is granted, leave to file a Seconded Amended Complaint as to Messrs. Kaufman and Kelly in connection with Counts III and IV.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: February 7, 2013